GROSS, APPELLEE, *v.* LAMB, APPELLANT.

(No. 80AP-659—Decided December 31, 1980.)

*Messrs. Pees & Behal* and *Mr. Robert J. Behal,* for appellee.

*Mr. John R. Louden,* for appellant.

McCORMAC, J. Plaintiff-appellee, George W. Gross, an attorney at law, brought an action against defendant-appellant, Vivian Lamb, in Franklin County Municipal Court for $10,000, claimed to be due him for breach of a contingent fee contract for legal services in a domestic relations action.

Defendant admitted that she had been plaintiff's client for a short period of time, but asserted that her representation by plaintiff was terminated by mutual agreement. She admitted nonpayment of legal fees, but denied the amount claimed. Defendant further asserted that plaintiff submitted to her a final statement for services rendered and that her obligation to him is limited to that amount, *i.e.,* $2,744.25.

Trial by jury was waived and the case was tried to the court, which rendered judgment to plaintiff in the sum of $10,000 and costs.

Defendant has appealed, asserting the following assignments of error:

"1. The Court below erred in finding as fact that 'Defendant discharged Plaintiff without sufficient cause and wrongfully retained new counsel,' the same being against the manifest weight of the evidence.

"2. The Court below erred in concluding that Plaintiff's rendition of a new statement of account was of no legal ef-

1

fect simply because there was no meeting of the minds with respect thereto.

"3. The Court below erred in concluding that a contingency contract in a domestic case is proper.

"4. The Court below erred in applying the law to the facts of this case, and, thereby, abused its discretion."

It is undisputed that, in August of 1977, defendant hired plaintiff, an experienced domestic relations attorney practicing in Columbus, to represent her in a divorce matter. Defendant is from Bellefontaine, Ohio; and, during the early parts of representation, plaintiff was required to go to Bellefontaine on three occasions. Defendant was unable to pay plaintiff on an hourly rate basis so the parties entered into a contract on October 28, 1977, as follows:

"FEE CONTRACT

"For services rendered and services to be rendered by my Attorney, George W. Gross, I do hereby agree to pay to him the sum of ten percent (10%) of whatever financial settlement I receive in the case of Douglas R. Lamb -vs- Vivian L. Lamb, Case No. 77-380, excluding awards of child support and personal property.

"[signed] Vivian L. Lamb

"Vivian L. Lamb
"Dated: October 28, 1977"

It is also undisputed that the attorney-client relationship between plaintiff and defendant terminated on or about April 10, 1978, and that, subsequently, defendant engaged another attorney who ultimately obtained an alimony award for her in the sum of $100,000, payable $50,000 at the time of settlement and $5,000 per year, commencing on October 31, 1979, and each anniversary date thereafter, until fully paid. Defendant had received $55,000 by the time the present case was tried and $45,000 was still payable.

There is a substantial factual dispute as to the reason and method of termination of the attorney-client relationship. Plaintiff testified in detail of his efforts to represent defendant and said that defendant terminated his services without valid reason and engaged another attorney. Defendant testified that she was dissatisfied with plaintiff's representation and had met with him with a friend to discuss the matter; at which time, he simply told her to get another attorney if she did not like the way he was representing her. The trial court, however, as finder of the fact, believed that plaintiff was properly performing his services, that he did not agree to a termination, and that defendant terminated the relationship improperly, constituting a breach of the contingent fee agreement.

There was also a disagreement as to the significance of an attempt to settle the fee dispute after the new attorney had been engaged by defendant. Plaintiff turned the file over to the new attorney and notified his former client (the defendant) that the contingent fee contract would be cancelled and held for naught if she would agree to pay him $2,500, plus $244.25 in court costs expended by plaintiff, which would be deducted from any settlement or court award that ultimately was made. Defendant refused to agree to that proposal. Plaintiff testified that the offer was strictly a settlement offer which was not accepted, rather than an agreement that those were the fees to which he was entitled. The trial court found as a fact that it was a settlement offer which was not accepted by defendant.

Defendant first asserts that the trial court's finding that defendant discharged plaintiff without sufficient cause and wrongfully retained new counsel is against the manifest weight of the evidence. That contention is not supported by the record. The testimony of plaintiff, if believed, as it obviously was, fully supports the finding of the trial court. Plaintiff testified that his discharge was occasioned by defendant's unwillingness to follow his advice. There is evidence to sup-

port the fact that plaintiff represented defendant properly and did not agree to voluntarily terminate the attorney-client relationship.

Defendant's first assignment of error is overruled.

Defendant secondly argues that the trial court improperly found that plaintiff did not render a final bill for services to defendant after termination of his services and erred in considering it a settlement offer upon which there was no meeting of the minds.

The letter from plaintiff to defendant with the statement of account and the promissory note are somewhat ambiguous, but may reasonably be interpreted as constituting an offer by plaintiff to settle their fee dispute, and his claim for breach of the contingent fee contract, upon an agreed payment of $2,744.25. Plaintiff's testimony was to that effect. The trial court's finding that it was a settlement offer which was not accepted is supported by the evidence.

Defendant's second assignment of error is overruled.

Defendant thirdly contends that the contingent fee contract entered into by the parties in this case was void *ab initio* as being illegal or contrary to public policy.

Defendant cites no statute or case law holding that contingent fee contracts in domestic relations matters are illegal or against public policy. She does cite EC 2-20 of the Code of Professional Responsibility, which provides, in part, as follows:

"* * * Because of the human relationships involved and the unique character of the proceedings, contingent fee arrangements in domestic relations cases are rarely justified.* * *"

Plaintiff supported the contingent fee contract on the basis that his client wanted a highly experienced Columbus lawyer who would have to incur the expense of going to Bellefontaine, Ohio, on a number of occasions and that his client was unable to pay any retainer or hourly fee, thus justifying a contingency agreement. Defendant did not contest that being the basis for the fee contract.

There was no showing that the contingent fee contract entered into by the parties was either illegal or against public policy. So far as the record is concerned, the contingent fee arrangement in this case may be one referred to in EC 2-20, where such an agreement is justified.

Defendant's third assignment of error is overruled.

Finally, defendant urges that the court below erred in applying the law to the facts of the case and thereby abused its discretion.

The only issue herein not previously decided is whether the trial court applied the proper standard of damages in awarding plaintiff $10,000 for breach of the contingent fee contract.

A client has the right to terminate an attorney-client relationship, subject to being responsible for damages for breach of the contract. As previously discussed, defendant was properly found to have breached the contract, thereby entitling plaintiff to damages. However, plaintiff's damages were not $10,000 for two reasons. First, plaintiff would have been required to incur further costs in completing his duties under the contract. Thus, the costs saved by him by not being required to complete the contract should have been deducted from the amount recoverable. Secondly, the award of damages given plaintiff by the trial court exceeded the amount plaintiff would have been entitled to had he completed the contract. Had plaintiff completed the contract, he would have been entitled to $5,000 at the time of the entering of the judgment and the initial payment of $50,000 for alimony, plus an additional $500 on October 31st of each year for the next 10 years if an additional $5,000 was paid at those times. By awarding plaintiff $10,000 immediately, no consideration was given to a reduction of the future amounts to present value, nor to

the possibility that future payments may not be made.

Plaintiff relies upon the cases of *Dombey, Tyler, Richards & Grieser* v. *Detroit, Toledo & Ironton RR. Co.* (C.A. 6, 1965), 351 F. 2d 121 [34 O.O. 2d 99], and *Harrison* v. *Johnson* (1940), 64 Ohio App. 185 [18 O.O. 55], to support his contention that he should receive the undiminished percentage of the total settlement. Those cases are distinguishable from the case at hand since the attorney in this case (the plaintiff) was notified of his discharge and the termination of the contract long before a. final settlement or disposition was effected.

Thus, defendant's fourth assignment of error is sustained to the extent that the award of damages of $10,000 is set aside. A limited new trial on the issue of damages alone is ordered with the court to determine, based upon the evidence produced, what amounts are to be deducted as having been saved by plaintiff by not having to perform the entire contract, as well as determining damages based upon the contract rather than an amount in excess of the contract.

Defendant's first three assignments of error are overruled. Defendant's fourth assignment of error is sustained. The judgment of the trial court as to the amount of damages is reversed. The case is remanded to the trial court for a new trial on the damage issue only.

*Judgment accordingly.*

WHITESIDE and REILLY, JJ., concur.